<pre>
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
</pre>

------------------------------------------------------X
```
                                              :
CERTAIN UNDERWRITING MEMBERS                  :
OF LLOYDS OF LONDON,                          :
                                              :
                        Petitioner,           :       16-CV-323 (VSB)
            -v-                               :
                                              :
INSURANCE COMPANY OF THE                      :
AMERICAS,                                     :
                                              :
                        Respondent.           :
                                              :
```
------------------------------------------------------X
```
                                              :
CERTAIN UNDERWRITING MEMBERS                  :
AT LLOYD'S, LONDON SUBSCRIBING                :
TO TREATY NO. 0272/04,                        :
                                              :
                        Petitioner,           :       16-CV-374 (VSB)
                                              :
            -v-                               :       **OPINION & ORDER**
                                              :
INSURANCE COMPANY OF THE                      :
AMERICAS,                                     :
                                              :
                        Respondent.           :
                                              :
```
------------------------------------------------------X
Case 1:16-cv-00323-VSB   Document 118   Filed 09/26/19   Page 1 of 11

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/26/2019

Appearances:

Ryan Ashley Nolan
Timothy Wayne Stalker
Kenneth M. Portner
Weber Gallagher Simpson Stapleton Fires & Newby, LLP
Philadelphia, Pennsylvania
*Counsel for Petitioner Certain Underwriting Members of Lloyds of London*

Joshua Philip Broudy
Rosenthal Lurie Broudy LLC
Philadelphia, Pennsylvania
*Counsel for Petitioner Certain Underwriting Members at Lloyd's, London Subscribing to Treaty No. 0272/04*

Phillip J. Loree, Jr.
Loree & Loree
New York, New York
*Counsel for Respondent Insurance Company of the Americas*

Leighton Rand Burns
Kernan and Kernan, P.C.
Utica, New York
*Counsel for Nonparty IPA Acquisitions, Inc.*

<u>VERNON S. BRODERICK</u>, United States District Judge:

   This dispute arises out of a reinsurance arbitration, in which Respondent Insurance Company of the Americas ("ICA") prevailed on a claim implicating two sets of underwriters, Petitioner Certain Underwriting Members at Lloyd's London, Subscribing to Treaty No. 0274/04 (the "0274 Underwriters") and Petitioner Certain Underwriting Members at Lloyds London, Subscribing to Treaty No. 0272/04 (the "0272 Underwriters," and, together with the 0274 Underwriters, the "Underwriters"). The Underwriters initiated these consolidated actions in an attempt to vacate the arbitration award and the case eventually ended in settlement. However, shortly after the matter was terminated, attorneys associated with nonparty IPA Acquisitions, Inc. ("IPA")—which had previously, and unsuccessfully, sought to intervene in the action—filed a notice of appeal, purportedly on behalf of Respondent ICA. Following multiple objections from the parties, IPA withdrew its notice of appeal several weeks later.

   The 0274 Underwriters now seek reimbursement for the attorney's fees they incurred in responding to IPA's improperly filed notice of appeal. Because IPA is not a party to this action and IPA's counsel has never represented ICA in this litigation, the motion for attorney's fees is GRANTED; however I find that a reduced fee award of $3,550—instead of the requested $4,970—is appropriate.

I.  **Background**

ICA is an insurance company licensed in the state of Florida, and is primarily involved in providing workers' compensation insurance for professional employment organizations. *Certain Underwriting Members at Lloyd's of London v. Ins. Co. of the Ams.* ("Vacatur M&O"), No. 16-CV-323 (VSB), 2017 WL 5508781, at *1 (S.D.N.Y. Mar. 31, 2017). Beginning on December 31, 2004, ICA purchased from the Underwriters two reinsurance treaties—Treaty 0274/04 and Treaty 0272/04 (the "Treaties")—which collectively contained three layers of reinsurance coverage providing excess-of-loss reinsurance for ICA's workers' compensation policies. *Id.*

The dispute giving rise to the arbitration at issue in this case involved two workers' compensation claims, each of which arose under a workers' compensation policy issued by ICA and reinsured by the Treaties. *Id.* at *2. When the Underwriters declined coverage on the claims, ICA demanded arbitration, *id.*, and, on October 19, 2015, the arbitration panel granted ICA's claim in its entirety, *id.* at *5.

Both Underwriters then filed petitions in this Court to vacate the arbitration award. (*See* No. 16-cv-323 (the 0274 Underwriters' action); No. 16-cv-374 (the 0272 Underwriters' action).) On February 25, 2016, I ordered that the cases be consolidated at the parties' request. (Doc. 19.)[1] On July 22, 2016, IPA—represented by attorney Leighton R. Burns, a member of the law firm Kernan and Kernan, P.C.—filed a motion to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(a)(2). (Doc. 56.) In its motion to intervene, IPA contended that it was the "rightful owner of the voting shares of [ICA]." (Doc. 56-3, at 2.) On August 3, 2016, I held a telephone conference to discuss IPA's proposed intervention, (ECF Dkt. Entry dated Aug.

---

[1] Unless otherwise specified, all references to docket entries ("Doc.") refer to the docket in Case No. 16-cv-323, the first-filed action.

3

3, 2016), and received post-conference submissions from the parties, (Docs. 68–77). On August 31, 2016, I held a conference at which I denied IPA's motion to intervene. (*See* Doc. 81.)

On March 31, 2017, I issued a Memorandum & Order vacating the arbitration award on the ground that one of the arbitrators failed to disclose his significant, ongoing business relationship with the principals of ICA. Vacatur M&O, 2017 WL 5508781, at *1. ICA appealed that decision to the Second Circuit, which vacated and remanded the matter for further proceedings. (*See* Doc. 97.)

Subsequent to remand, the parties entered into settlement negotiations. During the pendency of this litigation, ICA entered liquidation and the Florida Department of Financial Services (the "Florida Department") was appointed as Receiver of ICA in liquidation by the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida (the "Florida Receivership Court") in an Amended Consent Order (the "Liquidation Order") dated January 24, 2018.[2] In late 2018, the parties—i.e., both sets of Underwriters and the Florida Department as Receiver of ICA in liquidation—reached a settlement in which final judgment would be entered in favor of the Underwriters, without remanding the matter for further arbitration. (*See* Doc. 110.) The parties' stipulation further provided that the parties "waived their rights, if any, to appeal from the final judgments" contemplated therein. (*Id.* at 3.) On December 6, 2018, I So Ordered the parties' stipulation and closed the case. (Doc. 111.)

---

[2] On January 24, 2018, in *In re Insurance Co. of the Americas*, No. 2018 CA 00125 (Fla. Cir. Ct.), the Florida Receivership Court entered the Liquidation Order pursuant to the Florida Insurers Rehabilitation and Liquidation Act, § 631.001, *et seq.*, declaring that ICA was insolvent and should be placed into liquidation with the Florida Department acting as Receiver of ICA in liquidation. (Doc. 103-1.) The Liquidation Order provides that "[t]he [Florida] Department has full power to direct and manage the affairs of [ICA], to hire and discharge employees, and to deal with the property and business of [ICA]." (*Id.* ¶ 11.) The Liquidation Order further "authoriz[es] and direct[s]" the Florida Department to "[t]ake immediate possession of all the assets, estate, and property of every kind whatsoever and wherever located belonging to [ICA] . . . including, but not limited to . . . choses in action; rights of action; [and] contract rights," and to "[c]ommence and maintain all legal actions necessary . . . for the proper administration of this receivership proceeding." (*Id.* ¶ 15.)

On January 9, 2019, a notice of appeal was filed—purportedly on behalf of ICA— using the ECF credentials of Leighton Burns and his law firm Kernan and Kernan, P.C., and signed by "Frederick K. Davis, President Pro Tem." (Doc. 113.) Both the Florida Department and the 0274 Underwriters objected to the notice of appeal as frivolous, on the ground that it was filed by a nonparty who did not represent ICA, in contravention of both the December 6, 2018 Order of this Court entering the parties' stipulation of settlement, as well as the January 24, 2018 Liquidation Order. (Docs. 114, 115.)

On January 28, 2019, Mr. Burns submitted a letter explaining that IPA, "as parent of its subsidiary" ICA, had filed the January 9, 2019 notice of appeal "on grounds that IPA is the real party in interest." (Doc. 116.) Mr. Burns noted that IPA had also filed a Motion to Intervene and Emergency Motion to Vacate in ICA's liquidation proceedings before the Florida Receivership Court and stated that the notice of appeal was filed here in order to "satisfy the notice requirements for IPA to be able to perfect an appeal depending on the outcome" of IPA's motions in ICA's liquidation proceedings. (*Id.*) On February 7, 2019, the Florida Receivership Court denied IPA's motions to intervene and to vacate in their entirety, holding that IPA had "no standing" to file the motion to vacate, and expressly barring IPA from "bring[ing] litigation in the name of ICA, including the appeal filed in the United States Second Circuit Court of Appeals arising out of the Lloyds of London reinsurance arbitration matter." (*See* No. 16-cv-374, ECF No. 93-1, ¶¶ 2–3.) The Florida Receivership Court further awarded the Florida Department attorney's fees and costs incurred in opposing IPA's motions. (*Id.* ¶ 4.) On February 14, 2019, the Second Circuit issued its Mandate, granting IPA's request to withdraw its appeal pursuant to Federal Rule of Appellate Procedure 42. (Doc. 117.)

On February 27, 2019, the 0274 Underwriters filed the instant motion seeking attorney's

5

fees which they incurred in responding to IPA's fallacious notice of appeal. (No. 16-cv-374, ECF No. 93.) Neither Mr. Burns, his law firm, nor anyone else purporting to represent IPA filed an opposition to the 0274 Underwriters' motion for fees.

## II.     Discussion

### A.     *A Fee Award Is Appropriate Here*

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To impose a fee award pursuant to § 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." *Wynder v. McMahon*, 565 F. App'x 11, 13 (2d Cir. 2014) (summary order) (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)); *see also Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) ("A court may infer bad faith when a party undertakes frivolous actions that are completely without merit." (internal quotation marks omitted)). A court may sanction a law firm under § 1927 for the acts of its attorneys. *See Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147–48 (2d Cir. 2012) (concluding that § 1927 permits an award "against the firm as a whole for the actions of various lawyers" (internal quotation marks omitted)).

I find, as did the Florida Receivership Court, that an award of attorney's fees against IPA's counsel is appropriate here. (*See* No. 16-cv-374, ECF No. 93-1, ¶ 4.)[3] It is evident that

---

[3] According to the declaration filed by Mr. Burns in support of IPA's petition to intervene in this action, Mr. Burns is "duly admitted to practice law in the Courts of the State of New York and the United States District Court for the Southern District of New York," (Doc. 56-1), thereby rendering him an attorney "admitted to conduct cases in a[] court of the United States" pursuant to 28 U.S.C. § 1927. Because the sanctions referenced in § 1927 are limited to

6

the notice of appeal was improperly filed as there was no doubt that Mr. Burns lacked authority to appeal a judgment in this action, on either ICA's or IPA's behalf. Mr. Burns and Kernan and Kernan represent IPA—not ICA—which is not a party to this action. In fact, when IPA (acting through Mr. Burns) sought to intervene in this action in 2016, I denied its request. (*See* Doc. 81.) Perhaps for this reason, in filing the notice of appeal, Mr. Burns—whose electronic filing credentials were used to file the document—falsely represented that the notice was filed by "[R]espondent, Insurance Company of the Americas," and made no mention of IPA or assertion that ICA was not the real party in interest. (Doc. 113.). It was not until nearly three weeks later—on January 28, 2019, after both the Florida Department (ICA's sole authorized representative) and the 0274 Underwriters filed lengthy letters explaining the impropriety of the notice of appeal, (Docs. 114, 115)—that Mr. Burns acknowledged that the notice had in fact been filed on behalf of nonparty IPA "on grounds that IPA is the real party in interest," (Doc. 116). Mr. Burns attempted to justify his conduct by summarily arguing that he had filed the notice of appeal in order to preserve IPA's rights, in the event IPA's motions to vacate and intervene in the liquidation proceedings before the Florida Receivership Court were resolved in IPA's favor. (*Id.*) Not only was this conclusory justification[4] offered several weeks after the fact—and only after counsel for the parties in this case vociferously objected to Mr. Burns's actions—but the justification Mr. Burns provided was clearly a feeble one, given that the Florida Receivership Court rejected IPA's attempts to intervene in ICA's liquidation proceedings out of hand. (*See* No. 16-cv-374, ECF No. 93-1.)

In any event, even if Mr. Burns had a reasonable basis to believe that filing of a notice of

---

attorneys, I decline to award fees against IPA itself and instead limit the award to IPA's counsel.

[4] Indeed, Mr. Burns made no attempt to explain how permitting IPA to intervene in an action in Florida state court would somehow entitle IPA to appeal the judgment in the instant action, to which IPA was not a party.

appeal was an appropriate method by which to preserve future litigation rights, he knowingly misrepresented that the notice of appeal was filed on behalf of Respondent ICA. I find that Mr. Burns's deliberate misrepresentations, followed by his delayed and half-hearted explanations to the Court, improperly hindered the resolution of this matter. Indeed, such actions prolonged a dispute that had otherwise been resolved to the satisfaction of all parties. Because I have determined that Mr. Burns's actions were "completely without merit," I find it appropriate to infer bad faith. *See Huebner*, 897 F.3d at 55 (explaining that courts may "infer bad faith when a party undertakes frivolous actions that are completely without merit" (internal quotation marks omitted)). I therefore conclude that Mr. Burns and his law firm "unreasonably and vexatiously" "multiplie[d] the proceedings" in this matter and they should therefore be required to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"—specifically those fees incurred by the 0274 Underwriters in responding to ICA's frivolous notice of appeal. 28 U.S.C. § 1927.[5]

### B. *Fee Amount*

"The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *11991SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc.*, No. 13 Civ. 2608(JGK), 2014 WL 840965, at *10 (S.D.N.Y. Mar. 4, 2014) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). The starting point in analyzing whether claimed attorney's fees are reasonable is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir.

---

[5] Because I conclude that an award of attorney's fees is appropriate under 28 U.S.C. § 1927, I need not rely on my inherent authority to sanction Mr. Burns's and Kernan and Kernan's conduct. *See Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) (recognizing the "inherent power" of courts to impose sanctions "either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons"); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (confirming that § 1927 did not displace the court's "inherent power to impose sanctions for . . . bad-faith conduct").

2011).

The 0274 Underwriters seek reimbursement for 14 hours of work performed by Timothy W. Stalker of Weber Gallagher Simpson Stapleton Fires & Newby LLP ("Weber Gallagher"), at a rate of $355.00 per hour, for a total of $4,970. (*See* Doc. 93-3.)

### 1. Rate

The reasonableness of an hourly rate is determined through "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005). "In the Southern District of New York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases." *Watkins v. Smith*, No. 12cv4635 (DLC), 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) (collecting cases); *see also Hargroves v. City of New York*, No. 03 CV 1668 (RRM)(VMS), 2014 WL 1270585, at *12 (E.D.N.Y. Jan. 6, 2014) ($450 hourly for experienced civil rights litigator with 20 years of experience); *K.L. v. Warwick Valley Cent. Sch. Dist.*, No. 12 Civ. 6313(DLC), 2013 WL 4766339, at *7 (S.D.N.Y. Sept. 5, 2013) (noting approval of fees in the range of $400 to $450 in complex cases and $250 to $300 in less complex matters).

Mr. Stalker is Of Counsel in the Philadelphia office of Weber Gallagher, a midsize law firm with more than 100 attorneys across 10 offices.[6] Mr. Stalker has extensive, specialized experience arbitrating, mediating, and litigating reinsurance disputes and frequently serves as a lecturer and author for the insurance and reinsurance industries. In light of the prevailing hourly rates in this district, Mr. Stalker's level of experience and expertise, and the complexity and subject matter of this case, I find Mr. Stalker's requested hourly rate of $355.00 to be reasonable.

---

[6] Although Mr. Stalker did not detail his qualifications in his affidavit in support of his fee application, (Doc. 94-4), I have relied on publicly available information taken from the website of Mr. Stalker's law firm to evaluate his experience and qualifications. *See* Timothy W. Stalker, Weber Gallagher, https://www.wglaw.com/Attorneys/Timothy-W-Stalker (last visited Sept. 25, 2019).

### 2. Hours

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1997). In making this determination, the court must consider "the hours expended by counsel and the value of the work product . . . to the client's case." *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985); *see also Watkins*, 2015 WL 476867, at *6.

Mr. Stalker's billing records reflect that he spent 14 hours reviewing, analyzing, and responding to IPA's notice of appeal. (Doc. 93-3.) Although Mr. Stalker's billing records are sufficiently detailed, I find the number of hours expended to be excessive in light of the work product generated. In essence, Mr. Stalker was required to review and analyze the implications of a one-page notice of appeal filed by a nonparty, (*see* Doc. 113), and the resulting work product was limited to a four-page letter to the Court explaining why the notice was improper, (Doc. 115). Although I appreciate the complex nature of the underlying reinsurance dispute and acknowledge that the 0274 Underwriters communicated with the Florida Department to coordinate their opposition to IPA's notice of appeal, I conclude that 10 hours is a more reasonable amount of time to have dedicated to these relatively straightforward tasks.

I therefore conclude that the 0274 Underwriters are entitled to attorney's fees in the amount of $3,550 ($355 per hour x 10 hours of work), rather than the requested $4,970.

### III.   Conclusion

For the foregoing reasons, the 0274 Underwriters' motion for attorney's fees is GRANTED; however, I conclude that a reduced fee award of $3,550 is appropriate. Pursuant to 28 U.S.C. § 1927, attorney Leighton Burns and Kernan and Kernan, P.C. are ordered to

reimburse the 0274 Underwriters in the amount of $3,550 for fees incurred by the 0274 Underwriters in responding to the frivolous notice of appeal filed by Mr. Burns and Kernan and Kernan, P.C.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket Entry 93 in Case No. 16-cv-374, and to close Case Nos. 16-cv-323 and 16-cv-374.

SO ORDERED.

Dated: September 25, 2019
    New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge